UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 16-21256 (JJT) |
| | ) | | |
| MELISSA CAMERON, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | | |
| | ) | | |
| MELISSA CAMERON, | ) | ADV. PRO. No. | 17-02033 (JJT) |
| | ) | | |
| PLAINTIFF | ) | | |
| V. | ) | | |
| | ) | RE: ECF Nos. | 10, 26, 36 |
| PHH MORTGAGE CORPORATION, *et al* | ) | | |
| | ) | | |
| DEFENDANTS. | ) | | |

**RULINGS AND ORDER ON DEFENDANTS' MOTIONS TO
DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT**

I.    INTRODUCTION

The Plaintiff Melissa Cameron ("Mrs. Cameron" or "Debtor") proceeding *pro se*,

commenced the above-captioned Adversary Proceeding against Defendants PHH Mortgage

Corporation ("PHH") and Fannie Mae (collectively, "Movants"), Bank of America, N.A.,

successor-by-merger to Fleet National Bank ("BANA"), Members Mortgage Company, Inc.

("MMC")[1] and "John and Jane Does 1-25". Pending before the Court are the Movants' Motion

to Dismiss Adversary Proceeding ("Motion to Dismiss", ECF No. 10), the Debtor's Objection to

Motion to Dismiss (ECF No. 12), BANA's Motion to Dismiss (ECF No. 26) and the Debtor's

objections thereto (ECF Nos. 31 and 35). Also pending are the Debtor's Motion to Amend

---

[1] Members Mortgage Company, Inc., the original lender, did not appear in this Adversary Proceeding.

Complaint ("Motion to Amend", ECF No. 36), the Movants' Objection (ECF No. 37) and

BANA's Objection thereto (ECF No. 39). For the reasons stated herein, the motions to dismiss

are GRANTED and the Motion to Amend is DENIED.

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

The tortuous history of litigation between these parties originates from an underlying

foreclosure action brought by PHH against the Camerons in the Connecticut Superior Court. The

first action, *PHH Mortgage Corporation v. Cameron*, HHD-CV-08-5017152-S ("First

Foreclosure Action"), was brought on February 8, 2008 on behalf of Fannie Mae and sought to

foreclose upon the Debtor's property located at 631 Bloomfield Avenue, Bloomfield, CT 06002

(the "Property"). Thereafter, the case was dismissed because PHH could not prove that it was the

holder of the note prior to the time the action was initiated. PHH commenced a second action on

June 30, 2010 entitled, *PHH Mortgage Corporation v. Cameron, Melissa Et Al*, HHD-CV10-

6012369-S ("Foreclosure Action"). Following numerous filings by Mrs. Cameron and her

husband, Norman Cameron (individually, "Mr. Cameron" and together with Mrs. Cameron, "the

Camerons"), including several motions to dismiss, a trial was held before the State Court.

Following the trial, the State Court issued a Memorandum of Decision on April 29, 2016 and

entered a Judgment of Strict Foreclosure in favor of PHH on June 14, 2016.

In the Memorandum of Decision, the State Court (Wahla, J.) ultimately found that the

owner of the loan was Fannie Mae, the holder of the loan was PHH as servicer for Fannie Mae,

and that the assignments of the mortgage established the chain of title and PHH's standing to

bring the Foreclosure Action. The Court concluded:

> [T]he plaintiff has established its prima facie case for foreclosure: the
> plaintiff is the current owner and holder of the underlying Note, the

---

[2] The factual background recited herein is adduced from exhibits attached to the pending motions, the docket of the bankruptcy case, and the related State Court dockets of which this Court has taken judicial notice.

2

> Note is endorsed in blank; the plaintiff and/or their agents have been in
> possession of the original note since prior to the start of this foreclosure
> action; when this suit was commenced, the owner of the Note, Fannie
> Mae, authorized the plaintiff to act as servicer of this loan including
> bring[ing] a foreclosure action in servicer's name; the plaintiff is the current
> mortgagee of record; the plaintiff issued a written notice of default to
> the defendant; the defendant failed to cure the underlying default; and
> the loan is in default and currently due for the October 1, 2007, mortgage
> payment.[3]

The State Court also addressed and denied eighteen of the Camerons' special defenses. In sum, those defenses included the following claims: that the Camerons made certain exculpatory handwritten insertions on the Note at the time of closing; that the original mortgage lender, Members Mortgage Company Inc., did not exist due to the depiction of its name as it appears on the mortgage deed, 'Members Mortgage Inc.'; that no such entity named 'Fannie Mae' exists; that PHH is not a holder in due course; that PHH provided defective notice; and other defenses repetitive of the aforementioned claims.[4] The Court explicitly found all eighteen defenses to be either unsupported, unproven, meritless, or previously denied.[5] The Court further found that the Camerons' counterclaim, which pertained to the alleged writing on the original note, was not proven and did not survive the Court's ruling.[6]

Noteworthy here are the State Court's pointed findings about the Camerons' credibility. Judge Wahla observed: "Norman and Melissa Cameron… by their testimony, committed outright perjury."[7] In response to Norman Cameron's testimony that a debt was not owed to PHH but to 'Members Mortgage Inc.', allegedly substantiated by his contention that he was contacted by a representative of 'Members Mortgage, Inc.', the Court further found: "This conduct of the

---

[3] *See* Movants' Mot. to Dismiss, Ex. B at 17-18.
[4] *Id*. at 19.
[5] *Id*.
[6] *Id*. at 20.
[7] *Id*. at 14.

3

defendant is not simply untruthful and fraudulent, but constitutes committing perjury under oath.

The Court concludes that the defendant deliberately engaged in a fraudulent attempt to

manufacture the evidence. . ."[8] To further highlight the gravity of concerns regarding the

Camerons' credibility, the State Court took judicial notice of the First Foreclosure Action and

adopted the stated position of the prior judge (Satter, J.) who therein ruled: "More significantly,

the Court finds Melissa and Norman Cameron totally incredible when they testified the

[exculpatory] legend was handwritten on the Note before Melissa executed it. In fact, the Court

determines that testimony to be outright perjury."[9] Finally, the Court "completely agree[d]" with

PHH's assessment of the "untruthful testimony and evidence" that was presented during the trial,

as well as "the glaring and obvious fact that some of the testimony/evidence in th[e] case could

not possibly be truthful and accurate based upon the totality of the circumstances, including the

documentary evidence and witness testimony introduced."[10] The Court affirmed PHH's position

that "in order to uphold the integrity of this Court and integrity of the entire judicial

process…action [against the Camerons] is not only warranted but obligatory."[11]

     Following the entry of the Memorandum of Decision and an unsuccessful motion to

reargue, the Camerons filed an appeal to the Connecticut Appellate Court on June 7, 2016.

Thereafter on June 21, 2016, they filed an amended appeal. The Appellate Court dismissed the

appeal on July 20, 2016, leaving the amended appeal pending.[12] On July 27, 2016, PHH filed a

motion to terminate the appellate stay. The State Court granted that motion on August 30, 2017,

---

[8] *Id*. at 10-12.
[9] *Id.* at 13.
[10] *Id*. at 12-13.
[11] *Id*.
[12] *See* Movants' Mot. to Dismiss, Ex. E.

and terminated all automatic stays that exist or which may exist in the future due to any further

appeals. The Court held:

> First, the court believes that it is unlikely that the defendant will prevail on appeal.
> While the outcome of litigation can never be accurately predicted, the [trial]
> court's decisions to allow the foreclosure were based on a fair preponderance of
> the evidence and in accordance with procedures prescribed by the statutes and the
> Practice Book. Also, there is no irreparable injury to the defendants. They
> have been found liable on underlying judgment after a fair trial and appeal. They
> have never paid their debt. Further delay will prejudice the plaintiff and other
> parties as the debts and expenses in this litigation continue to grow making the
> property, subject to the levy, less desirable…For all these reasons, the court finds
> that the appeals were taken solely for the purpose of delay. The due
> administration of justice requires termination of the automatic stays. [13]

The amended appeal, however, remains pending before the Connecticut Appellate Court.

On August 1, 2016, Mrs. Cameron filed for bankruptcy relief under Chapter 7.[14] Mrs.

Cameronok thanks! initially scheduled PHH and Fannie Mae as having unsecured contingent

claims in the amount of $0.00 and scheduled MMC as having a disputed unsecured claim in

the amount of $242,250.00.[15] She later amended her schedules and listed BANA as having

an unsecured, contingent, unliquidated, disputed claim in the amount of $87,178.30. PHH

and Fannie Mae's claims were scheduled as unsecured, contingent, unliquidated and

disputed in the amounts of $414,006.98 and $242,250.00, respectively.[16]

On May 31, 2017, PHH filed a Motion for Relief from Automatic Stay ("Motion for

Relief").[17] Mrs. Cameron filed several objections to the Motion for Relief, again arguing,

*inter alia*, that PHH was not the current holder of the note, that PHH had no standing to

---

[13] *See PHH Mortgage Corporation v. Cameron, Melissa Et Al*, HHD-CV10-6012369-S, Docket Entry #:299.00;
*PHH Mortgage Corporation v. Melissa Cameron Et Al.*, AC-39293, Docket Entry #:165039.
[14] All references to the docket of the bankruptcy case will appear in the form: "Case ECF No. __."
[15] *See* Case ECF No. 12.
[16] *See* Case ECF No. 31.
[17] Case ECF No. 29.

foreclose, and that the note was fraudulently assigned and thereby void.[18] A hearing on the

Motion for Relief was held on July 13, 2017, and the matter was taken under advisement.

On July 12, 2017, while the Motion for Relief was still pending, the Mrs. Cameron

initiated this Adversary Proceeding. By Order of this Court dated July 17, 2017, the Motion

for Relief was granted.[19]  That order specifically held:

> Res judicata, collateral estoppel and the Rooker-Feldman doctrine bar the
> Debtor's relitigation of the Debtor's alleged defenses and claims and bind this
> Court to the judgment  of the Superior Court. The claims and  defenses of the
> debtor  and her husband were previously raised and fully adjudicated at the trial in
> the Superior Court and are spurious, dilatory and utterly without merit.[20]

Thereafter, on July 26, 2017, the Mrs. Cameron filed a Motion to Reconsider the Court's

Order Granting Relief from Stay in the bankruptcy case.[21]

 On August 9, 2017, the Movants filed their Motion to Dismiss in the Adversary

Proceeding. Mrs. Cameron filed her Objection on August 30, 2017. On September 14, 2017, the

Court held a hearing on the Motion to Dismiss and the Motion to Reconsider where the

Camerons, counsel for BANA and counsel for PHH appeared and presented oral argument.

Following the hearing, the matters were taken under advisement. On December 6, 2017, this

Court denied the Motion to Reconsider, finding:

> The abusive, dilatory and misguided efforts and arguments of Mr. and Mrs.
> Cameron have fueled interminable, wasteful, duplicative and dilatory
> proceedings. Neither the Debtor nor her husband have been credible in these
> matters or the State Court and their repetitive and strained arguments have been
> found to be meritless after plenary proceedings in the State Court. The motions
> for reconsideration are untimely, advance no new cognizable legal arguments and
> fail to satisfy any of the tests for reconsideration under FRCP 59 as is well
> delineated in the Objection of PHH.[22]

---

[18] *See* Case ECF Nos. 30, 35, 41.
[19] *See* Case ECF No. 46.
[20] *Id*.
[21] Case ECF No. 53; *see also* Case ECF Nos. 57 and  68.
[22] Case ECF No. 75.

Mrs. Cameron subsequently appealed that Order to the District Court for the District of Connecticut on December 19, 2017. That appeal remains pending.

On October 13, 2017, BANA filed its Motion to Dismiss. On November 27, 2017, Mrs. Cameron filed an Objection and a Motion to Amend the Complaint.[23]  On November 30, 2017, the Court denied the Motion to Amend for failure to attach a proposed complaint.[24] On December 5, 2017, the Mrs. Cameron filed an Amended Objection to BANA's Motion to Dismiss[25], as well as an Amended Request to Amend Plaintiff's Complaint ("Request to Amend") with an attached proposed complaint ("Amended Complaint").[26] On December 11, 2017, PHH filed its Objection to the Request to Amend.[27] On December 19, 2017, BANA filed its Objection to the Request to Amend.[28] On December 27, 2017, Mrs. Cameron filed responses to BANA's and PHH's objections.[29]

On January 8, 2018, the State Court granted PHH's motion to reset law days and set a new law day for March 19, 2018, "for the owner of equity of redemption and subsequent encumbrances… [with] all other terms of prior judgment [of foreclosure to] remain in effect."[30]

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 7012(b), allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, the Court must accept all facts set forth in the complaint as true

---

[23] ECF No. 30.
[24] ECF No. 32
[25] ECF No. 35.
[26] ECF No. 36.
[27] ECF Nos. 37 and 38.
[28] ECF No. 39.
[29] *See* ECF Nos. 40 and 41.
[30] *PHH Mortgage Corporation v. Cameron, Melissa Et Al*, HHD-CV10-6012369-S, Docket Entry #:302.86.

and draw all reasonable inferences in the Plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A claim will survive a motion to dismiss, however, only if the Plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim. *Twombly*, 550 U.S. at 555. If the Plaintiff's pleadings "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

Here, because the Debtor is proceeding *pro se*, her Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* litigant must still state a plausible claim for relief. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Finally, when considering a motion to dismiss, the Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local*, 992 F.2d 12, 15 (2d Cir. 1993). "In considering a res judicata defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the court." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F.Supp.2d 140, 144 (D. Conn. 2005)

IV.    DISCUSSION

A.  The Movants' Motion to Dismiss

In the Complaint, the Debtor makes several disjointed arguments that she claims entitle her to an injunction prohibiting the Defendants from foreclosing upon the Property, a determination that all liens encumbering the Property are unsecured and void, and compensatory and punitive damages. She asserts, *inter alia*[31]: that the efforts of PHH to obtain relief from stay in the bankruptcy case were in bad faith[32] ("Count I"); that certain exculpatory writings were made on the Mortgage Note[33] ("Count II"); that Defendants did not disclose that they were trying to make money off the debt[34] ("Count III"); that the Defendants made false representations as to the loan[35] ("Count IV"); that PHH proceeded with the Foreclosure Action without proper documentation of the alleged note and mortgage[36] ("Count V"); that the Movants failed to comply with notice requirements[37] ("Count VI") that the assignments of the mortgage to Fannie Mae and then to PHH were fraudulent conveyance[38] ("Count VII"); that the Movants failed to provide an accurate accounting of the debt and have not identified the owner of the debt[39] ("Count VIII"); that the Movants lacked standing to bring the Foreclosure Action[40] ("Count IX"); and that the Movants violated "Regulation Z" of the Truth in Lending Act ("TILA") and the Fair Debt Collections Practices Act ("FDCPA")[41] ("Count X").

---

[31] The Court generally agrees with the Movants' categorization of the Plaintiff's arguments. Each argument will be described and analyzed by the Court in the form "Count __."
[32] *See* Compl., ECF No. 1 at ¶ 18.
[33] *Id*. at ¶ 7.
[34] *Id*. at ¶ 9.
[35] *Id*. at ¶ 10.
[36] *Id*. at ¶ 16.
[37] *Id*.
[38] *Id*. at ¶¶ 21-22.
[39] *Id*. at ¶ 35.
[40] *Id*. at ¶¶ 38-42.
[41] *Id*. at ¶ 43.

In their Motion to Dismiss, the Movants argue that the Rooker-Feldman doctrine, res judicata, and collateral estoppel bar the Debtor from bringing this Adversary Proceeding. Specifically, they contend that Mrs. Cameron is seeking to challenge or undo the Judgment of Strict Foreclosure entered in PHH's favor in the Foreclosure Action and that most of the claims and allegations advanced by the Plaintiff were previously adjudicated or are currently being adjudicated in the State Court. The Movants alternatively argue that the Debtor's remaining claims are time barred.

## i.   The Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 125 S. Ct. 1517, 161 L. Ed.2d 454 (2005). The doctrine is rooted in the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged ... exclusively in [the Supreme] Court." *Id*. at 283. Four requirements must be met for the doctrine to apply: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by that state court judgment; (3) the plaintiff must invite the district court to review and reject the judgment; and (4) the state court judgment must have been rendered before the district court proceedings commenced. *See Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005). The Second Circuit Court of Appeals has loosely termed the first and fourth requirements as procedural and the second and third requirements as substantive. *Id*.

Here, Counts II, V, VI, VII, VIII and IX are unequivocally barred by the Rooker-Feldman doctrine. The procedural requirements are met as to all of those claims. First, the Debtor lost in State Court, as evidenced by the Judgement of Foreclosure. Second, the Judgment

10

of Foreclosure was rendered on June 14, 2016 before these proceedings were commenced in the

bankruptcy court on July 12, 2017.

To the extent that the Debtor asks this Court to grant her title to the Property because the

Judgment of Foreclosure was obtained fraudulently, or to the extent that she otherwise

challenges its validity, the substantive requirements are also met. All of the allegations pertain to

PHH's alleged fraud, lack of standing, submission of faulty documents or other wrongdoing in

connection with the Foreclosure Action. The Second Circuit Court of Appeals has held these

very arguments to be barred by Rooker-Feldman. *See Vossbrinck v. Accredited Home Lenders,

Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (holding claims that Defendants engaged in fraud during

the foreclosure action by misrepresenting they had standing and submitting fraudulent title

documents are barred by Rooker-Feldman). The injuries of which the Debtor complains are

inexorably determined by the Judgment of Foreclosure that entitled PHH to enforce its rights

upon the Property. The Debtor's claim for relief, namely the imposition of an injunction

prohibiting the Defendants from foreclosing upon the Property, necessarily invites this Court to

review and reject the Judgment of Foreclosure and the explicit findings in the Memorandum of

Decision related thereto. This is Rooker-Feldman's "paradigm situation" where the Debtor has

"repaired to federal court to undo the [state] judgment". *Cf. Exxon Mobil*, 544 U.S. at 293.

The Debtor's own articulation of the purpose of this Adversary Proceeding confirms that

Rooker-Feldman bars this Court from entertaining her claims. According to Mrs. Cameron, this

Action was brought because "Defendant initiated a foreclosure action without standing to do

so."[42] If this Court were to declare that the alleged fraud occurred during the Foreclosure Action

and award the Debtor the relief she seeks, "it would effectively be reversing a judgment of the

---

[42] *Id*., Cover Sheet.

state court." *Bernstein v. New York*, No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9,

2007); *see also Hoblock*, 422 F.3d at 88 ("Can a federal plaintiff avoid Rooker-Feldman simply

by clever pleading—by alleging that actions taken pursuant to a court order violate his rights

without ever challenging the court order itself? Surely not.").  Accordingly, this Court finds that

Counts II, V, VI, VII, VIII and IX are barred by the Rooker-Feldman doctrine and is it therefore

without jurisdiction to decide them.

ii.  Res Judicata

"[A] federal court must give to a state-court judgment the same preclusive effect as

would be given that judgment under the law of the State in which the judgment was rendered."

*O'Connor v. Pierson*, 568 F.3d 64, 69 (2d Cir.2009) (alteration in original) (quoting *Migra v.*

*Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Under both Connecticut and

federal law, the doctrine of res judicata provides that "a final judgment[43], when rendered on the

merits, is an absolute bar to a subsequent action, between the same parties or those in privity

with them, upon the same claim." *Dontigney v. Roberts,* 73 Conn. App. 709, 710 (2002);

*Mazziotti v. Allstate Ins. Co.,* 240 Conn. 799, 812 (Conn.1997). "This doctrine means that once a

case reaches a final judgment on the merits, the parties cannot later relitigate the issues that were

raised or could have been raised in that earlier case." *Vandever v. Emmanuel,* 606 F.Supp.2d

253, 254 (D. Conn. 2009). *See also Chien v. Skystar Bio Pharmaceutical Co.,* 623 F.Supp.2d

255, 260 (D. Conn. 2009) (res judicata "bars not only those claims or legal theories that were

asserted in the prior action, but also those legal claims or theories that could have been asserted,

---

[43] While no party argued whether a pending appeal is an exception to the "finality" requirement of the principles of preclusion, the Court notes that in Connecticut, claims and issues are eligible for the application of res judicata and collateral estoppel even if a court's determination is still subject to reversal on appeal. *See, e.g., Carnemolla v. Walsh,* 75 Conn.App. 319, 325, 815 A.2d 1251, 1256-7 (Conn. App.2003), *cert. denied*, 263 Conn. 913, 821 A.2d 768 (2003) (holding that because a pending appeal does not preclude the application of res judicata, it cannot preclude the application of the narrower principle of collateral estoppel).

regardless whether they were in fact raised by the parties, so long as they arise from the same transaction that formed the basis of the prior action.") (internal quotation marks and citations omitted).

To determine whether an action involves the same claim as a prior action, Connecticut courts apply a transactional test. *See Saunders v. Principal Residential Mortg., Inc.*, 2012 WL 4321974, at *5 (D. Conn. 2012) (citing *Weiss v. Weiss*, 297 Conn. 446, 461 (2010)). "The transactional test measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Saunders*, 2012 WL 432174 at *5) (citations and quotations omitted) (quoting *Legassey v. Shulansky*, 28 Conn. App. 653, 656 (1992)).

Here, Counts I through IX are unquestionably barred by res judicata.

Count I, which argues that PHH's efforts to obtain relief from stay in the bankruptcy case were in bad faith because they proceeded "with no evidentiary support", is barred by res judicata. The gravamen of this argument, which Plaintiff repeatedly asserted in her objections to the Motion for Relief, turns on Plaintiff's persistent assertion that none of the Defendants (including PHH) have valid liens or standing to exercise any rights over the Property. Because the Debtor had a fair opportunity to raise this argument in the bankruptcy proceeding and in fact did utilize that opportunity, she is barred from relitigating that claim in this Adversary Proceeding.

Even if Counts II, V, VI, VII, VIII and IX were not barred by the Rooker-Feldman doctrine, they would otherwise be barred by res judicata. The earlier Foreclosure Action, which included a Memorandum of Decision and a Judgment of Strict Foreclosure, was a previous adjudication on the merits. Additionally, the requirement that the previous action involved the party against whom res judicata is invoked, or its privy, is also met, where Mrs. Cameron was a

party in the Foreclosure Action. Finally, all of the Debtor's claims could have been raised in the state court proceeding as they implicate either the validity of the loan documents or enforcement of them in the Foreclosure Action.

In Count II, the Debtor claims that certain exculpatory writings she or her husband made on the Note were omitted in the certified copies presented by PHH in the Foreclosure Action. This argument could have been raised and was, in fact, raised in the Debtor's special defenses five, six, and twenty. [44]

Counts V, VII, VIII and IX each assail the Movants' standing in the Foreclosure Action which, as discussed above, was central to the entry of the Judgment of Foreclosure in favor of PHH. The claims that the Movants proceeded in the Foreclosure Action without proper documentation, that the assignments from Fannie Mae to PHH were fraudulent, that the Movants neither accounted for the debt nor identified the owner of the debt, and that the Movants lacked standing to initiate the Foreclosure Action, respectively, all were or could have been raised in the Foreclosure Action.

Count VI alleges that the Movants failed to comply with notice requirements. This argument could have been raised and was, in fact, raised in the Foreclosure Action as the Debtor's ninth special defense.[45]

Finally, Counts III and IV are also barred by res judicata. In Count III, the Debtor claims that at the time of the making of the note, MMC did not disclose that "they were trying to make money off the debt by securitizing the loan and selling it to investors" and that they were "not the true lenders" and "lacked the right to engage in trust business in the State of Connecticut."[46]

---

[44] *See* Movants' Mot. to Dismiss, Ex. B at 16, 19.
[45] *Id*. at 19.
[46] *See* Compl. at ¶ 9.

Count IV alleges that "the true facts were that said defendants were going to provide a purported loan which would cost Plaintiff fees and charges which she was not aware of" and would "sell her loan to investors as a part of a scheme to inflate home prices and set her up for default".[47] As these claims go to the making, enforcement, and validity of the note, the Debtor had a full and fair opportunity to raise these claims as defenses in the Foreclosure Action.

Accordingly, Counts I through  IX are barred by res judicata.

iii.  Collateral Estoppel

Under Connecticut law, "an issue is subject to collateral estoppel when it satisfies the following elements: 1) it was fully and fairly litigated in the first action; 2) it was actually decided; and 3) the decision was necessary to the judgment." *Virgo v. Lyons*, 209 Conn. 497, 501 (1988); *State v. Joyner*, 255 Conn. 477, 490 (2001). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Lafayette v. General Dynamics Corp.*, 255 Conn. 762 (2001) (citations and emphases omitted).

Here, Counts I, II, V, VI, VII, VIII and IX are barred by collateral estoppel, as these identical issues were properly raised, actually litigated, and necessarily determined by the State Court.

Count I, as stated above, was fully and fairly litigated in the bankruptcy proceeding. The Order granting relief from stay specifically held that these arguments were barred by the Rooker-Feldman doctrine, res judicata and collateral estoppel and necessarily determined PHH's standing, without which, the relief could not have been validly rendered.

---

[47] *Id*. at ¶ 10.

As discussed above, Count II was fully and fairly litigated as a special defense in the Foreclosure Action. The State Court actually decided this issue, where, in its assessment of the Mrs. Cameron's defense, it found, "[m]ost importantly, this court, on the record, reviewed the original Note, dated July 22, 2005, [] and found it did not include any handwritten language added after paragraph 8".[48] As to the Mrs. Cameron's evidence on this issue, the State Court further found "the testimony of defense witnesses to be total fabrications."[49] Finally, as this issue goes to the validity or enforcement of the note, without the determination of which the judgment could not have been validly rendered, the decision was necessary to the judgment.

Counts V, VII, VIII and IX were fully litigated or were otherwise submitted for a determination to the State Court by PHH by virtue of the allegations in the complaint initiating the Foreclosure Action. Following a trial, the State Court found in favor of PHH with regard to the chain of title, the making and assignments of the mortgage note, the owner of the note and the holder at the time the Foreclosure Action was commenced, and the accounting of the debt owing.[50] Each issue, fully litigated and actually decided, established a prima facie case for foreclosure without which the judgment could not have been validly rendered.

Similarly, the Debtor's claim regarding PHH's alleged failure to comply with notice requirements in Count VI was also fully litigated in the Foreclosure Action. The State Court necessarily determined that "the plaintiff issued a written notice of default to the defendant", "the notice of intention to foreclose on the property, dated November 15, 2007, was mailed to the defendants", and that the defense was "meritless" because the "defendants did not present any evidence denying receipt of the default notice letter."[51]

---

[48] *See* Movants' Mot. to Dismiss, Ex. B at 16, 19.
[49] *Id*. at 19.
[50] *See supra* Part II.
[51] *See* Movants' Mot. to Dismiss, Ex. B at 7, 19.

16

Accordingly, because Counts II, V, VI, VII, VIII and IX are issues that have been fully and fairly litigated, actually decided, and were necessary to the Judgment of Foreclosure, collateral estoppel bars the Debtor from relitigating those issues in this Court.

### iv.   The Remaining Claims

In Count X, the Debtor alleges damages for violations of the TILA and the FDCPA by "the defendants" collectively.[52] The Movants argue that these claims are time barred, and this Court agrees.

To be timely, "an FDCPA claim must be brought within one year from the date on which the violation occurs." *Sykes v. Mel Harris and Associates, LLC*, 757 F.Supp.2d 413, 421 (S.D.N.Y. 2010); 15 U.S.C. § 1692k(d). Because the alleged misconduct would have occurred at the time of the making of the note in 2005, the Debtor's claim is time barred.

Similarly, private actions for damages based on TILA violations are subject to a one-year statute of limitations. *See Johnson v. Scala*, No. 05-CV-5529, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007); 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *see also In re Merhi*, 518 B.R. 705, 717 (Bankr. E.D.N.Y. 2014) ("The violation occurs when the transaction is consummated. Nondisclosure is not a continuing violation.") (quoting *Velardo v. Fremont Investment & Loan*, 298 Fed.Appx. 890, 892 (11th Cir.2008)). Thus, any cause of action the Debtor may have brought against MMC or the Movants would have accrued upon closing of the Property and has therefore expired under § 1640(e).

---

[52] *Compl.* at ¶¶ 43-44.

Moreover, even if the claims were not time barred, the Court finds that the Debtor has not

alleged facts sufficient to state a plausible claim to relief under TILA or FDCPA.  The Debtor

merely makes a conclusory allegation concerning those claims, and alleges no facts upon which

the Court could readily draw the reasonable inference that any one of the Defendants is liable for

the alleged misconduct. Naked assertions devoid of factual enhancement will not withstand a

motion to dismiss, *see Twombly*, 550 U.S. at 557, and even "a *pro se* litigant must state a

plausible claim for relief." *See, e.g.*, *Walker*, 717 F.3d at 124.

 Accordingly, the remaining claims do not survive the Movants' Motion to Dismiss.

B.  BANA's Motion to Dismiss

In its Motion to Dismiss, BANA further argues that the Debtor fails to state a cognizable

claim for relief. Upon review of the Complaint, the Court readily agrees. The Complaint makes

no factual allegations against BANA and does not identify a single cause of action alleged

against it. Instead, it appears BANA is named as a Defendant simply because it holds a junior

lien interest in the Property as successor to Fleet by virtue of a prior judgment lien entered in

Fleet's favor. The overwhelming majority of the allegations attack PHH's standing to foreclose

on the Property, and make no mention of BANA other than to state that it is a party to the

Adversary Proceeding. Without any affirmative claim for relief or facts alleged as to any

wrongdoing by BANA, the Complaint fails to state a plausible claim for relief against BANA.

C.  The Motion to Amend

The only remaining question here is whether the Debtor should be belatedly granted

leave to amend the Complaint.

Federal Rule of Civil Procedure 15(a)(2), made applicable to this Adversary Proceeding

by the Federal Rule of Bankruptcy Procedure 7015, states that "a party may amend its pleading

only with the opposing party's written consent or the court's leave. The court should freely give

leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The mandate that leave to amend be

freely given, however, is to be heeded only in the absence of a substantial reason, such as undue

delay, bad faith, dilatory motive, undue prejudice and futility of the amendment. *See Foman v.*

*Davis*, 371 U.S. 178, 182 (1962); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am.,*

*N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).

Although "a *pro se* litigant should generally be granted leave to amend her complaint at

least once, when a liberal reading of the complaint gives any indication that a valid claim might

be stated", a court "need not grant leave to amend where an amendment would be futile." *Cote v.*

*Town of St. Albans*, 444 Fed. Appx. 499, 499-500 (2d Cir. 2011) (internal citations and

quotations omitted). "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir.

2002) (internal quotation marks and citations omitted); *see also Nwachukwu v. Liberty Bank*, No.

3:16-cv-704 (CSH), 2016 WL 3647837, at *2) ("An amendment is considered 'futile' if the

amended pleading fails to state a claim or would be subject to a successful motion to dismiss on

some other basis.")

Here, even read liberally, the Court finds that any amendments to the Complaint as to the

Movants would be futile. The Amended Complaint asserts no new causes of action against these

Defendants and parrots the same meritless, dilatory, bad faith arguments inexorably intertwined

with the Foreclosure Action.

As to the claims against BANA, the Court also finds that an amendment would be futile

and in bad faith here. The allegations against BANA in the Amended Complaint stem from a

Superior Court action initiated by Fleet National Bank against the Camerons entitled *Fleet*

19

*National Bank v. Norman Cameron*, HHD-CV970570665-S ("Fleet Judgment Action"). Therein,

a Judgment Lien was entered on September 9, 1999 in favor of Fleet in the amount of

$87,178.30.[53] More than ten years after the judgment was entered, the Camerons petitioned the

court on June 20, 2011 and October 23, 2012 to deem the Judgment Lien satisfied, arguing that it

had been satisfied through a negotiated reduction of the judgment amount and payment of that

amount.[54] The Court (Sheridan, J) considered the Camerons' request and on March 22, 2013,

issued a Memorandum of Decision which denied their motion.[55] The Memorandum details the

history of the judgment and its collection, as well as the parties' potential agreement to accept

less than the full amount owed. The Court found:

> The evidence indicates that although one or more attempts were made to
> pay a reduced, compromised amount in full satisfaction of the debt, those
> compromise agreements were never fully and timely performed.
> Therefore, since the agreements were not performed, "actual payment" to
> the judgment creditor of the amount as compromised was never made and
> the judgment was not satisfied. The defendants offered no other evidence
> that the judgment in its original, uncompromised amount (i.e., $87,178.30
> plus interest, costs and attorney's fees) has been paid, therefore it is
> concluded that judgment has not been satisfied.[56]

The State Court also determined that the Camerons failed to sustain their burden of

demonstrating any circumstance that would justify re-opening the judgment.  Confronted with

the Camerons' allegations that Fleet lacked standing to bring the action, failed to provide

evidence regarding its status as holder of the promissory note and provided questionable

affidavits at the time of the Fleet Judgment Action, the Court held, "[t]hese perceived

discrepancies hardly rise to the level of fraud and duress our courts have found sufficient to

justify re-opening of a judgment -  especially when twelve years have passed since the issuance

---

[53] *See* BANA's Obj. to Pl. Mot. to Amend, ECF No. 39.
[54] *Id*., Ex. A-C.
[55] *Id*., Ex. D.
[56] *Id*. at 5.

of the judgment."[57] Accordingly, the State Court found the judgment was not satisfied and

remained due and owing. Subsequently, on April 29, 2013, the State Court denied the Camerons'

Motion to Reargue.[58]

In the Amended Complaint, the Debtor argues that a settlement was negotiated to reduce

the amounts the Camerons owed BANA pursuant to the Judgment Lien, notably, with no

mention of Judge Sheridan's Memorandum of Decision. The Debtor describes a series of

transactions and payments which purportedly assert that BANA was paid in full or in an overage

amount of $14,232.94, and seeks a determination that: 1) BANA fraudulently encumbered her

residence by virtue of the Judgment Lien; and 2) the judgment has been fully satisfied.

To the extent that the Debtor seeks to challenge the validity of the Judgment Lien, her

first argument is barred by the Rooker-Feldman doctrine. The first and fourth elements are met

here. The Debtor lost in State Court when the Judgment Lien was entered in Fleet's favor. That

judgment was entered on September 9, 1999, well before these proceedings commenced on July

12, 2017. The second and third elements are also met. The Debtor's injury—that BANA

fraudulently encumbered her property—was caused by the Judgment Lien. Finally, the Debtor's

request to deem the Judgment Lien void necessarily asks this Court to review and reject the

judgment of the State Court in the Fleet Judgment Action. Accordingly, the Court is without

jurisdiction to decide these claims.

Furthermore, the Debtor's argument that the judgment has been fully satisfied is also

barred by the Rooker-Feldman doctrine. The procedural requirements are easily met here. The

Debtor lost in State Court by virtue of the Memorandum of Decision. That Memorandum was

entered on March 22, 2013, before these proceedings commenced on July 12, 2017. Because the

---

[57] *Id*. at 7.
[58] BANA's Obj. to Pl. Mot. to Amend, Ex. E

Debtor's injury is a product of the Judgment Lien in the Fleet Judgment Action, and vindication

of this claim would require this court to review and reject the decision therein, the substantive

requirements are also met and this argument is barred by the Rooker–Feldman doctrine.

Although BANA did not advance this argument, the Court nonetheless finds that this

claim is also barred by res judicata, as it could have been and was in fact raised in the Fleet

Judgment Action. Mrs. Cameron was a party in the Fleet Judgment Action. The same claim at

issue here, that the Judgment Lien was satisfied and BANA breached the agreement, was raised

by the Debtor in her motion to determine that the judgment had been satisfied and her motion to

open and vacate the judgment in the Fleet Judgment Action.[59] Accordingly, this claim is barred

by res judicata.

Collateral estoppel also precludes the Debtor from relitigating this issue. As previously

mentioned, this issue was fully and fairly litigated in the Fleet Judgment Action. The State Court

denied the Debtor's claim in the Memorandum of Decision and explicitly decided that the

judgment had not been satisfied.[60] Without this determination, which was the very basis of the

Debtor's motion, the judgment could not have been validly rendered. Accordingly, the Debtor is

precluded from relitigating that issue in this Court.

### D.  Residual Claims Against MMC

The Debtor has also asserted various claims against MMC, who has heretofore failed to

appear or defend this action. Because MMC is in privity with PHH by virtue of its

assignor/assignee relationship, the claims against MMC must also be dismissed under the

doctrine of res judicata to the same extent that such claims are dismissed against PHH. A key

consideration in determining the existence of privity is the sharing of the same legal right by the

---

[59] *Id.*, Ex. A-C.
[60] *Id.*, Ex. D at 5.

parties allegedly in privity. *See Tibetts v. Stempel*, 354 F.Supp.2d 137, 148 (D. Conn. 2005) (internal quotation marks and citation omitted). *See also Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000) ("a party will be bound by the previous judgment 'if his interests were adequately represented by another vested with the authority of representation.'") (quoting *Alpert's Newspaper Delivery, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989)). Therefore, "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977). Accordingly, for compelling cause demonstrated herein, this Court also bars any residual claims against MMC as an appropriate sanction. Such a sanction is consistent with the rulings herein and the interests of justice and finality.

E.  PHH's Sanctions Request

The Movants also ask the Court to issue sanctions against the Mrs. Cameron pursuant to the Court's Order Granting PHH's Motion for Relief from Stay, wherein this Court stated, "[t]he claims and defenses of the debtor and her husband were previously raised and fully adjudicated in the Superior Court and are spurious, dilatory and utterly without merit. To the extent to such defenses and claims are further prosecuted, the Court will entertain appropriate requests for sanctions."[61]

Here, the unabashed vigor of the Camerons and their repetitive assaults upon the Movants have remained undeterred despite multiple judicial admonitions. Many factors here favor an award of sanctions, including the Debtor's elusive, false, misleading and spurious filings and her repeated use of the Court system to delay an inevitable and fully litigated foreclosure.

---

[61] Case ECF No. 46.

Accordingly, the Court will award Movants twice their reasonable fees and expenses, incurred in connection with these bankruptcy proceedings, to be added to the Debtor's debt.

V.   CONCLUSION

For the reasons stated herein, this Adversary Proceeding is dismissed in its entirety, with prejudice. Accordingly, it is hereby:

ORDERED, that Fannie Mae and PHH's Motion to Dismiss (ECF No. 10) is GRANTED.

It is further ORDERED that BANA's Motion to Dismiss (ECF No. 26) is GRANTED.

It is further ORDERED that the Plaintiff's Motion to Amend Complaint (ECF No. 36) is DENIED.

It is further ORDERED that any remaining claims against Members Mortgage Company Inc., shall be dismissed.

It is further ORDERED that the Movants shall submit a motion and affidavit in support of the sanctions awarded herein within fifteen (15) days hereof.

Dated: February 1, 2018                                    BY THE COURT

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

24